

**FILED**

Mar 16 2015, 9:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Joann M. Price
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

Donald W. Wruck
Wruck Paupore PC
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of: D.P. and D.P.E. and J.P. (Mother)

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

March 16, 2015

Court of Appeals Case No. 45A03-1410-JT-358

Appeal from the Lake Superior Court
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause Nos. 45D06-1403-JT-81
45D01-1403-JT-82

**Bailey, Judge.**

# Case Summary

J.P. ("Mother") appeals the trial court's order granting the petition of the Department of Child Services ("DCS") to terminate Mother's parental rights as to D.P. and D.P.E. ("the Children"). Mother raises two issues for our review, which we reframe as a single issue: whether the trial court deprived Mother of due process of law when, in Mother's absence and without representation of counsel, it converted the nature of the proceedings and then terminated her parental rights.

Finding this a deprivation of due process guarantees, we reverse.

# Facts and Procedural History

D.P. was born to Mother in 2010; D.P.E. was born in 2011.[1] Mother had a learning disability and was unable to care for Children without supervision from a friend or relative.

On January 22, 2012, Mother was forced out of the home she shared with her aunt. She found shelter in a friend's home, who alerted DCS that Mother was homeless and that Mother could not care for the Children without help. Mother's aunt was aware of this when she ejected Mother from the home. Because of Mother's disability, she received social security disability income

---

[1] D.E., alleged father of both children, is not an active party to this appeal.

which was managed by her aunt. Without the ability to manage her own finances, Mother was unable to finance other housing. DCS removed the Children from Mother's care, and on January 24, 2012, the Children were adjudicated as Children in Need of Services ("CHINS").

[5] Over the course of the CHINS action, the Children were placed into a foster home in which they thrived. Mother used some services, but was unable to obtain permanent housing. She also missed numerous appointments with service providers, often because she would leave Gary for Chicago, Illinois, and find herself without money to return. Mother also missed several hearings and other meetings associated with the CHINS action and DCS-provided services. Beginning in June 2014, Mother ceased appearing for visitation with the Children.

[6] On June 17, 2014, a permanency plan of termination of parental rights was adopted, and DCS subsequently filed a petition to terminate Mother's parental rights as to the Children.[2] The order adopting the permanency plan provided that on October 3, 2014, a hearing would be conducted on the plan. On August 19, 2014, an initial hearing on the petition was conducted ("the August 19 hearing"). Mother did not appear for the hearing, and DCS sought to proceed

---

[2] None of the parties to this appeal have provided this Court with a copy of the Chronological Case Summary ("CCS") or other docketing information from the trial court. We remind all parties that our appellate rules require that at least one party to an appeal provide this document in an Appendix. *See* Ind. Appellate Rules 50(a)(2)(a) & 50(a)(3). Nor have we been provided with a copy of DCS's petition for termination of parental rights.

at that time with an evidentiary hearing on the petition. The trial court denied DCS's request, and instead scheduled an omnibus hearing for September 24, 2014.

[7] On August 21, 2014, DCS sent mail to Mother's last known address to inform her of the upcoming hearing. The letter stated:

> Please find enclosed with this letter a copy of the Court Order of August 19, 2014 setting your termination of parental rights matter for Omnibus Hearing[3] on September 24, 2014 at 8:30 p.m…. If you fail to appear, the court will proceed in your absence. You have the right to appear in person or by sending a letter if unable to appear in person. You also have the right to an appointed attorney if you cannot afford to hire one yourself.

(App'x at 8.)

[8] The order enclosed with the letter included a list of those present and absent from the August 19 hearing, recorded a finding of adequate service of process, and included the statement that the court "Resets for a(n) Omnibus Hearing on 9/24/2014 at 8:30 AM." (App'x at 9.)

[9] On September 23, 2014, the day prior to the scheduled omnibus hearing, a DCS caseworker called Mother and confirmed over the phone that mother knew about the hearing. Mother stated that she had arranged for transportation to

---

[3] Neither the letter nor the court's order defined the term "omnibus." The term is not used in the statutory language of our termination of parental rights statutes. The purpose of an omnibus date, as set forth in our criminal statutes, "is to establish a point in time from which various deadlines … are established." Ind. Code § 35-36-8-1(b). The Indiana Code no longer uses the term omnibus hearing in statutory language, but the term generally refers to certain pretrial status hearings in criminal cases. *See*, *e.g.*, *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007).

the hearing, and the DCS caseworker told Mother that if her arrangements fell through, she could contact a DCS service provider for transportation assistance.

[10]  Mother did not appear for the hearing on September 24, 2014 ("the September 24 hearing"). The individuals present in the courtroom, in addition to courtroom staff, were an attorney for DCS, an attorney for the Children's Court Appointed Special Advocate ("CASA"), a DCS caseworker, and the Children's foster mother. Mother did not have counsel, nor had counsel been appointed for her. [4]

[11]  In the absence of Mother or counsel for Mother, DCS moved the trial court to proceed forward that day to an evidentiary hearing on the petition to terminate Mother's parental rights. The CASA agreed with DCS's request to proceed to a final evidentiary hearing. After hearing evidence concerning service of notice upon Mother of the "omnibus hearing" and her failure to appear for other appointments, the trial court permitted DCS to introduce evidence in support of the petition to terminate Mother's parental rights.

---

[4] At some point during the proceedings, Mother was provided with a court-appointed guardian *ad litem* who was present at some proceedings on Mother's behalf; that guardian *ad litem* is Mother's appellate counsel in the instant appeal. Because we lack a complete record of the proceedings below during the pendency of the CHINS case, *see supra* n.2, we have no record of whether the guardian was contacted concerning DCS's termination petition.

[12] At the conclusion of the hearing, the trial court announced in open court that DCS had met its evidentiary burden, and terminated Mother's parental rights. A written order was entered the same day.

[13] This appeal ensued.

# Discussion and Decision

[14] On appeal, Mother's contends that she was deprived of due process, first claiming as inadequate the notice concerning the nature of the September 24, 2014 hearing, and second claiming as a violation of her due process rights the *in absentia* hearing resulting in the termination of her parental rights.

[15] Our standard of review is highly deferential in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997).

[16] Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[17] Here, Mother contends that the notice she received and the trial court's decision to hear evidence and enter a judgment despite her absence constituted a violation of her due process rights. "[W]hen the government seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process." *Q.B. v. Marion Cnty. Dep't of Child Servs.*, 873 N.E.2d 1063, 1067 (Ind. Ct. App. 2007). These include not only compliance with the various statutory requirements of the Indiana Code, but also the fundamental constitutional requirements prohibiting "'state action that deprives a person of life, liberty, or property without a fair proceeding.'" *In re A.B.*, 922 N.E.2d 740, 744 (Ind. Ct. App. 2010) (quoting *In re B.J.*, 879 N.E.2d 7, 16 (Ind. Ct. App. 2008), *trans. denied*).

[18] Among the protections written into our statutes, Indiana Code section 31-35-2-6.5 provides the requirements for notice of a hearing on a petition to terminate parental rights:

> (b) At least ten (10) days before a hearing on a petition or motion under this chapter:
>
> (1) the person or entity who filed the petition to terminate the parent-child relationship under section 4 of this chapter; or
>
> (2) the person or entity who filed a motion to dismiss the petition to terminate the parent-child relationship under section 4.5(d) of this chapter;
>
> shall send notice of the review to the persons listed in subsections (c) and (d).

Individuals entitled to notice under the statute include a child's parents and legal counsel who has entered an appearance on behalf of the parents. I.C. §§ 31-35-2-6.5(c)(1) & (2).

[19] Compliance with the statute is mandatory and is a procedural precedent, but not an element of a plaintiff's claim. *In re H.K.*, 971 N.E.2d 100, 103 (Ind. Ct. App. 2012). Rather, a claim of inadequate notice under the statute is a defense that must be asserted. *Id.* Once notice is placed at issue, the plaintiff must bear the burden of proving compliance with the statute. *Id.*

[20] Further, our statutes afford parents the opportunity to be heard and to make recommendations concerning their children. I.C. § 31-35-2-6.5. Parents are also entitled to cross-examine witnesses, obtain witnesses and other evidence by means of compulsory process, and introduce evidence. I.C. §§ 31-32-2-3(b)(1)-(3). Finally, parents are entitled to court-appointed counsel when they have not already waived that right, I.C. § 31-32-4-3, and "'if the State imparts a due process right, then it must give that right.'" *In re G.P.*, 4 N.E.3d 1158, 1166 (Ind. 2014) (quoting *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011)).

[21] "Due process has never been defined, but the phrase embodies a requirement of 'fundamental fairness.'" *In re C.G.*, 954 N.E.2d at 917. The U.S. Supreme Court has stated, "the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "The process due in a termination of parental rights proceeding turns on the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure." *C.G.*, 954 N.E.2d at 917.

[22] Here, Mother claims that DCS's notice of the upcoming hearing was inadequate, and thus places at issue compliance with the notice statute. She also contends that the trial court's decision to terminate her parental rights in her absence, without representation of counsel, was a violation of her statutory and constitutional due process rights.

[23] We agree.

[24] Turning first to the adequacy of the notice, Mother does not contend that she received no notice of the hearing. Rather, she argues that the notice she received was not adequate to inform her of the nature of the proceeding.

[25] DCS sent Mother a letter on August 21, 2014, which stated, "Please find enclosed with this letter a copy of the Court Order of August 19, 2014 setting your termination of parental rights matter for Omnibus Hearing on September 24, 2014 at 8:30 am…. If you fail to appear the court will proceed in your absence." (App'x at 8.) Further, Geralyn Martin ("Martin"), a DCS caseworker, called Mother the day before the hearing and spoke with Mother on the telephone. Martin testified that she told Mother of the hearing and "informed [her] that no matter if she is here or not here, the hearing will proceed. And I stressed to her that she needed to be here this morning." (Tr. at 7.)

[26] Mother argues that all of this was insufficient to inform her that her absence from the September 24, 2014 hearing would result in the hearing becoming a final fact-finding hearing on DCS's petition to terminate her parental rights.

Indeed, the hearing was not initiated as one intended to serve as an evidentiary hearing on DCS's petition. Rather, as the trial court observed, the hearing was scheduled as an omnibus hearing. When, in light of Mother's absence, DCS again moved during the September 24 hearing to present evidence on its petition for termination of Mother's parental rights, the trial court requested and was provided with evidence concerning DCS's efforts to give Mother notice of and obtain Mother's participation in the omnibus hearing. DCS presented testimonial and documentary evidence concerning Mother's pattern of non-attendance at hearings and at sessions and appointments related to DCS-provided services, and the Children's Court-Appointed Special Advocate ("CASA") made similar representations to the court. After hearing this, the trial court granted DCS's motion to proceed in Mother's absence with an evidentiary hearing on the termination petition.

[27]     We note, however, that Mother did not have counsel present during either the August 19 hearing or the September 24 hearing, nor was counsel appointed. Thus, there was no one present at either hearing to ensure that Mother's due process rights were protected. This is even more egregious than *A.B.*, which likewise involved a deprivation of due process rights. 922 N.E.2d at 746. In *A.B.*, we reversed the termination of parental rights for a parent who was not present for an already-scheduled final evidentiary hearing on a termination petition. *Id.* at 743-44. A.B.'s mother was not present at the beginning of the hearing, which began more than an hour after its scheduled time. *Id.* at 743. The trial court permitted A.B.'s mother's attorney to withdraw from the

representation after the attorney had been unable to make contact, meet, or speak with mother, and proceeded with the hearing. *Id.* A.B.'s mother eventually arrived at the courthouse and, when the trial court was informed of her presence, the court permitted mother to meet with counsel but refused to allow mother into the hearing, stating, "'We're almost done here.'" *Id.* (quoting the trial transcript).

[28] On appeal in *A.B.*, this Court determined that this amounted to a due process violation as to A.B.'s mother. Reversing the order terminating parental rights, the *A.B.* Court observed:

> [T]the risk of error is substantial where, as here, the juvenile court terminates Mother's parental rights after conducting a short hearing during which only one witness for the State testifies, no cross-examination is conducted, Mother is not represented by counsel, and Mother is prohibited from attending the hearing and/or presenting evidence in her favor although present in the courthouse before the end of the hearing, albeit late.

*Id.* at 745.

[29] In reaching this conclusion, the *A.B.* Court relied upon an earlier case from this Court, *Thompson v. Clark Cnty. Div. of Family & Children*, 791 N.E.2d 792 (Ind. Ct. App. 2003). In *Thompson*, a divided panel of this Court observed that Thompson had engaged in "deception and delay[ing] tactics," *id.* at 796, which resulted in numerous delays of a final hearing on a termination petition. *Id.* at 795. At the final hearing, "Thompson sought yet another continuance," which the trial court denied. *Id.* Upon motion and over the objection of Thompson's attorney, the trial court proceeded with an expedited proceeding and terminated

Thompson's parental rights. *Id.* Yet despite Thompson's repeated deceptions and delays, this Court concluded that "the trial court could have conducted the final termination hearing in her absence where witnesses testified, cross-examination was conducted, and exhibits were properly admitted into evidence." *Id.* at 796. Because none of this occurred, the *Thompson* Court reversed the termination order.

[30] In the case now before us, two witnesses testified for DCS. One was a DCS caseworker whose testimony and documents were the bulk of the evidence. The other witness was Children's foster mother, who was asked a total of four questions and provided short, one-sentence answers. (Tr. at 29-30.) At the conclusion of the hearing, the trial court ruled orally from the bench that DCS had met its burden and granted the petition to terminate Mother's parental rights.

[31] Our review of the record discloses no opportunity for Mother to seek counsel, save for a single sentence in the letter from DCS notifying Mother that she was entitled to counsel; Mother did not, then, affirmatively waive counsel. *See G.P.*, 4 N.E.3d at 1164-65 (concluding that waiver of counsel and decision to proceed *pro se* at an earlier stage of a CHINS proceeding does not work a permanent waiver of right to appointed counsel upon a petition for termination of parental rights). And while DCS regards Mother's failure to seek counsel as a matter of little moment—or even as waiver—under the totality of the circumstances, we cannot agree. As in both *A.B.* and *Thompson*, Mother was denied a meaningful opportunity for cross-examination, presentation of evidence, and indeed—

unlike both *A.B.* and *Thompson*—representation of counsel. This is particularly worrisome given DCS's knowledge of Mother's apparently significant learning and cognitive problems, and the placement of the Children in a stable foster home where the foster parent intended to adopt the children.

[32] The magnitude of Mother's parental rights and the risk of error in the State's procedural approach in this case outweigh the State's interests in its chosen procedural path. *See C.G.*, 954 N.E.2d at 917. Both constitutional and statutory guarantees were transgressed. Accordingly, we cannot conclude that Mother's due process rights received adequate protection in this matter. We therefore reverse the trial court's order terminating Mother's parental rights, and remand for further proceedings.

[33] Reversed and remanded.

Robb, J., and Brown, J., concur.