

**FILED**
Oct 27 2015, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.G. (Minor Child): | October 27, 2015 |
| | Court of Appeals Case No. 20A03-1502-JT-61 |
| A.M. (Father) | Appeal from the Elkhart Circuit Court |
| *Appellant-Respondent,* | The Honorable Terry C. Shewmaker, Judge |
| v. | The Honorable Deborah A. Domine, Magistrate |
| Indiana Department of Child Services, | Trial Court Cause No. 20C01-1501-JT-10 |
| *Appellee-Petitioner* | |

**Vaidik, Chief Judge.**

# Case Summary

A.M. ("Father") appeals the trial court's termination of his parental rights. Among other things, he argues that paternity was not established until four months before the termination proceedings and, as a result, the statutory requirement of removal from "the home" for fifteen of the most recent twenty-two months cannot be met. Because we interpret "the home" to mean the home of the child and not the home of a particular parent, we affirm.

# Facts and Procedural Summary

S.G. ("Mother") gave birth to A.G. on July 5, 2013. At that time, A.G.'s father was unknown. Soon after A.G. was born, he was placed in the Elkhart General Hospital neonatal intensive care unit because of severe drug withdrawal. Meconium screening showed the presence of cocaine and THC in his body, and Mother admitted to using crack cocaine, heroin, marijuana, methadone, Xanax, narcotic pain relievers, Klonopin, and alcohol while she was pregnant. A.G.'s drug withdrawal was so severe that it took weeks of hospital care for him to recover.

A.G. was placed in the custody of the Elkhart County Department of Child Services ("DCS") by an emergency order, and DCS filed a verified petition alleging A.G. was a Child in Need of Services ("CHINS") on July 22, 2013. On July 29, 2013, while he was still in the hospital recovering, the trial court

adjudged A.G. a CHINS and ordered that he be placed in foster care. A.G. was later released from the hospital directly to his current foster parents.

[4] Shortly after the CHINS order, Mother supplied the names of two alleged fathers for DNA testing, one of whom was Father. At that time, Father was incarcerated in Florida, where he had been since before A.G. was born. When Father completed his sentence in Florida, for "cashing a check that supposedly came out stolen," Tr. p. 178, he was transferred to a Georgia jail to serve a different sentence for possession of a firearm.

[5] In addition to A.G., Father has three older children, ages 18, 17, and 11, who live with their respective mothers. Unlike his relationship with A.G., Father claims he stays in contact with his three older children. *Id.* at 180. However, he has not provided for their support or been able to care for them during his extended time in jail. *Id.*

[6] Paternity was not determined by DNA testing until September 15, 2014, when A.G. was fourteen months old. But because Father was still incarcerated, DCS was unable to place A.G. with him. Father has never met A.G.

[7] On September 23, 2014, DCS petitioned for involuntary termination of both Mother's and Father's parental rights. Appellant's Addend. p. 1. Father wrote to the court on November 25, 2014, and offered the names of three family members who he thought might be able to take custody of A.G. on his behalf— his sister, his brother in North Carolina, and his mother. But none of the three

had met A.G., even after paternity was established, and DCS did not place A.G. with any of them.

[8] On January 29, 2015, Father was dismissed as a party to the September 23, 2014 termination petition. That same day, DCS filed a separate petition to involuntarily terminate Father's parental rights, and an evidentiary hearing was held the following day. During the evidentiary hearing, the family case manager and Court Appointed Special Advocate (CASA) recommended termination of parental rights. The court issued the following findings terminating Father's parental rights:

> [Father] completed paternity testing in prison; [Father] has never been a placement option for his child because he has been incarcerated since the baby was born; the child has been out of the care of his parents for his entire eighteen months of life; he has never been placed in the care of a parent.

> * * * * *

> [Father] has been incarcerated for A.G.'s entire life; the biological father was incarcerated months before the child was born and has never seen, never held, nor has he touched his child; he has never cared for his son nor has he provided any support, whatsoever, for A.G.

> * * * * *

> [Father's] history suggests future incarceration and future instability for his child. Since 2008, [Father] has been incarcerated for four years and ten months; he has criminal charges in New York, Florida and Georgia for auto theft, identity

theft and possession of fire arms [sic]. In addition, [Father] has three other children and is providing for care of none of them at this time.

Appellant's App. p. 6-10 (formatting altered).

[9] Father now appeals, claiming DCS failed to establish the required statutory elements by clear and convincing evidence.

# Discussion and Decision

[10] "The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citations omitted). The parent-child relationship is one of our culture's most valued relationships. *Id.* (citation omitted). "And a parent's interest in the upbringing of their child is 'perhaps the oldest of the fundamental liberty interests recognized by the courts.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). But parental rights are not absolute—"children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *Id.* (citations omitted). Thus, a parent's interests must be subordinated to a child's interests when considering a termination petition. *Id.* (citation omitted). A parent's rights may be terminated if the parent is unable or unwilling to meet his parental responsibilities by failing to provide for the child's immediate and long-term needs. *Id.* (citations omitted).

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Rather, we consider only the evidence and the reasonable inferences that are most favorable to the judgment of the trial court. *Id.* When the trial court has entered findings and conclusions, we apply a two-tiered standard of review. *K.E. v. Ind. Dep't of Child Servs.*, No. 82S04-1508-JT-491, 2015 WL 4944977, at *4 (Ind. Aug. 20, 2015). First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The judgment will be set aside only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

Father contends the trial court erred in terminating his parent-child relationship with A.G. First, Father argues that DCS failed to prove by clear and convincing evidence that A.G. was removed for a sufficient time. Second, he argues that there is insufficient evidence of a reasonable probability that the conditions that resulted in the child's placement outside the home will not be remedied, or that the continuation of the parent-child relationship poses a threat to the well-being of the child. Finally, he argues that DCS failed to prove termination of the parent-child relationship is in A.G.'s best interests.

# I. Requisite Time Period

Father contends that he only knew with certainty that A.G. was his child for approximately four months before the termination hearing and, therefore, DCS did not meet the first statutory requirement for removal. To terminate a parent-child relationship, the statute requires the State to prove that one of three conditions exist:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>
> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

Ind. Code § 31-35-2-4(b)(2)(A).

The relevant consideration here is subsection (A)(iii). The text indicates that the State is required to prove two things: (1) the child was removed from the parent and (2) the child was under the supervision of the agency for at least fifteen of the most recent twenty-two months.

[15] First, there is no question that A.G. was constructively removed from Father. When A.G. was removed from Mother shortly after his birth, Father was not living in the same home—he was in jail in Florida. The record reflects that by the time paternity was established in September 2014, Father was in a Georgia jail and unable to care for A.G. As a result, DCS had no choice but to continue placement outside Father's home. Removal from Father, then, occurred when paternity was established and DCS was unable to return A.G. to him. *See In re I.A.*, 934 N.E.2d 1127, 1134 (Ind. 2010) (explaining that removal occurs when DCS retains the child in foster care rather than placing him with the parent).

[16] Second, it is undisputed that A.G. was removed from his home and placed by DCS with foster parents for eighteen consecutive months—his entire life—before the termination hearing. Appellant's Br. p. 14. Father argues, however, that the duration of removal should be calculated based on the date that A.G. was removed from him. Specifically, he contends that "the date the child is removed from *the* home" should be read as requiring removal from *Father's* home for the purpose of calculating the required fifteen months. I.C. § 31-35-2-4(b)(2)(A)(iii). We disagree and interpret the statute to refer to the *child's* home in calculating the duration of removal, and not the home of a particular parent.

[17] Beginning with the plain language of the statute, the State is required to prove that the child was under the supervision of DCS for fifteen months. The phrase "beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child" is merely intended to explain how to calculate the length of time the child has

been under DCS supervision. The phrase does not add requirements to the condition of DCS supervision for fifteen of the most recent twenty-two months.

[18] Moreover, we reach the same result using other canons of statutory construction. Our "main objective in statutory construction is to determine, effect and implement the intent of the legislature." *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 948 (Ind. 2001). Of particular concern in this case, where statutes address the same subject, "'they are *in pari materia*, and we harmonize them if possible.'" *Hall Drive Ins., Inc. v. City of Fort Wayne*, 773 N.E.2d 255, 257 (Ind. 2002) (quoting *United States Gypsum, Inc. v. Ind. Gas Co.*, 735 N.E.2d 790, 802 (Ind. 2000)).

Here, both Indiana Code section 31-35-2-4.5[1] and 42 U.S.C. section 675(5)(E)[2] use similar language to require DCS to file a petition to terminate parental rights once a child has been under its supervision for fifteen of the most recent twenty-two months. With respect to the fifteen-month time constraint in the federal and Indiana statutes, the focus of the inquiry is the length of time the child has been in temporary custody, not the length of time the child was removed from a particular parent. The fifteen-month requirement for filing a termination petition serves the "State's very legitimate interest in promoting adoptions of children who have been removed from their parental home for

_____

[1] (a) This section applies if:

* * * *

(2) a child in need of services or a delinquent child:

A) has been placed in:

(i) a foster family home, child caring institution, or group home licensed under IC 31-27; or

* * * *

as directed by a court in a child in need of services proceeding under IC 31-34 or a delinquency action under IC 31-37; and

(B) has been removed from a parent and has been under the supervision of the department or county probation department for not less than fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child.

(b) A person described in section 4(a) of this chapter shall:

(1) file a petition to terminate the parent-child relationship under section 4 of this chapter; and

(2) request that the petition be set for hearing. . . .

Ind. Code § 31-35-2-4.5.

[2] "[I]n the case of a child who has been in foster care under the responsibility of the State for 15 of the most recent 22 months, . . . the State shall file a petition to terminate the parental rights of the child's parents (or, if such a petition has been filed by another party, seek to be joined as a party to the petition), and, concurrently, to identify, recruit, process, and approve a qualified family for an adoption . . . ." 42 U.S.C. § 675(5)(E).

extended periods of time," instead of endless foster care placements. *Phelps v. Sybinsky*, 736 N.E.2d 809, 818 (Ind. Ct. App. 2000), *trans. denied*; *see also Castro v. State Office of Family & Children*, 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied*. To implement the legislative intent, the focus of the inquiry under Indiana Code section 31-35-2-4(b)(2)(A)(iii) should also be the length of time the *child* has been out of his home, and not the length of time since the child was removed from a particular *parent*.

[20] Finally, we do understand that there will be cases where the father will have less time to work with DCS as a result of adhering to the fifteen-month timeline. However, time is only one of four distinct statutory considerations in the termination proceeding. In cases where paternity is not immediately established, courts must also look to the other statutory requirements in Section 31-35-2-4(b)(2) to determine whether termination is appropriate, as we have done here. For example, a court may determine that it is in the best interests of a child not to terminate his relationship with his father to allow the father more time to remedy the conditions that resulted in the child's removal.

[21] In summary, the requirements of Subsection (A)(iii) were met. The trial court found that A.G. was removed from Father, and that A.G. had been under the supervision of DCS for more than fifteen of the most recent twenty-two months.

## II. Reasonable Probability that the Conditions Resulting in Removal Will Not Be Remedied

[22] Father next challenges the sufficiency of the evidence supporting the trial court's judgment that there is not a reasonable probability that he will remedy the conditions that led to A.G.'s removal from him, and that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to A.G.'s well-being.

[23] Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied;
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child. . . .

[24] Because DCS was required to establish, by clear and convincing evidence, only one of the options in subsection (B), we only discuss whether there is a reasonable probability that the conditions resulting in A.G.'s removal from Father will not be remedied. *See* I.C. § 31-35-2-4(b)(2)(B).

[25] The analysis to determine whether the conditions that led to the child's placement outside the home will not be remedied requires two steps. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d at 1231. First, the court identifies the conditions that led to removal; and second, the court determines whether there

is a reasonable probability that those conditions will not be remedied. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (citations omitted). In the second step, the trial court judges a parent's fitness at the time of the termination proceeding, balancing a parent's recent improvements against "habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Id.* (quoting *K.T.K.*, 989 N.E.2d at 1231).

[26] As discussed above, when A.G. was removed from Mother, Father was not residing in the same home. Therefore, the condition resulting in A.G.'s removal from Father is the same condition that prevented DCS from placing A.G. with him once paternity was established—incarceration.

[27] Next, addressing the probability that the conditions leading to placement outside the home of Father will not be remedied, the trial court found that Father "has been incarcerated for four years and ten months" out of the last seven years. Appellant's App. p. 9. He was convicted of auto theft in New York, identity fraud in Florida, and possession of a firearm as a felon in Georgia. *Id.* at 8. Father "was incarcerated months before the child was born and has never seen, never held, nor has he touched his child; he has never cared for his son nor has he provided any support, whatsoever, for [A.G.]"[3] *Id.*

---

[3] *K.E. v. Indiana Department of Child Services*, No. 82S04-1508-JT-491, 2015 WL 4944977 (Ind. Aug. 20, 2015), was decided after briefs were filed in this case. The Indiana Supreme Court made it clear that incarceration and the potential release date of the parent is only one consideration. *Id.* at *6. Standing alone, it may not be sufficient to satisfy the statute. The Court went on to consider the programs completed by the father while incarcerated, the fact that K.E. visited his father every other week, and the fact that the father had made

Additionally, Father has three other children who each live with their respective mothers. *Id.* at 9. During his period of incarceration, Father "provid[ed] care for none of them." *Id.*

[28] Father's history of incarceration, his present lack of support for his other children, and his complete lack of contact with A.G. support the trial court's judgment that there is a reasonable probability that the circumstances leading to A.G.'s removal from Father will not be remedied. The judgment is not clearly erroneous.

# III. Best Interests of the Child

[29] Finally, Father argues that there is insufficient evidence to support the trial court's conclusion that termination of the parent-child relationship is in A.G.'s best interests. In determining what is in the best interests of the child, the trial court is required to look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until the child is irreversibly harmed before terminating the parent-child relationship. *Id.* Moreover, we have previously held that the recommendation by both the case manager and child advocate to terminate parental rights, in addition to evidence that the conditions resulting in

"great strides" while incarcerated. *Id.* at *6-7. The facts of *K.E.* are easily distinguishable from the facts here, as highlighted by the trial court finding that Father and A.G. have never met.

removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*.

[30] Here, both the family case manager and the CASA supported termination of Father's parental rights and supported adoption by A.G.'s current caregivers. Tr. p. 199, 215. Moreover, as discussed above, Father's history of incarceration, his present lack of support for his other children, and his complete lack of contact with A.G. all indicate a reasonable probability that the circumstances leading to A.G.'s removal from Father will not be remedied. Therefore, we conclude that the totality of the evidence supports the trial court's determination that termination of Father's parental rights is in A.G.'s best interests.

[31] The evidence supports the trial court's findings, and the findings support the judgment. Seeing no clear error in either the findings or the judgment, we conclude that the trial court did not err in ordering termination of the parent-child relationship between A.G. and Father.

[32] Affirmed.

Robb, J., and Pyle, J., concur.