## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 18 2018, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Andrew J. Sickmann
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of D.J. (Minor Child) and

K.T. (Mother) and P.J. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

April 18, 2018

Court of Appeals Case No. 89A01-1711-JT-2675

Appeal from the Wayne Superior Court

The Honorable Darrin M. Dolehanty, Judge

Trial Court Cause No. 89D03-1707-JT-14

**Crone, Judge.**

# Case Summary

K.T. ("Mother") and P.J. ("Father") (collectively "Parents") appeal the trial court's order involuntarily terminating their parental rights to their minor child, D.J. ("Child"). Parents contend that the trial court erred in concluding that there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied and that termination is in Child's best interests. They also contend that their due process rights were violated when the trial court overruled their objections to being called as witnesses by the Indiana Department of Child Services ("DCS") at the factfinding hearing. Finding no error and no due process violation, we affirm.

# Facts and Procedural History

Parents are Child's biological parents. Before Child was born, Parents lived with Child's two half siblings, Jo.B. and Ja.B. In March 2016, DCS filed petitions alleging that Jo.B. and Ja.B. were children in need of services ("CHINS"). In May 2016, Parents admitted to the truthfulness of the allegations in the petitions, including that they each had a substance abuse problem that affected their ability to care for the children. The trial court in those proceedings ordered Parents to participate in certain services. On August 19, 2016, the court held a detention hearing, after which the children were removed from Parents' home and made temporary wards of DCS.

Child was born on August 22, 2016. One week later, while Child was still in the hospital, DCS filed a petition alleging Child to be a CHINS. The trial court

authorized DCS to take Child into protective custody because he had tested positive for illegal substances at birth and Parents were using illegal drugs, including heroin. DCS placed Child with his maternal aunt. Parents initially denied the allegations in the CHINS petition but ultimately admitted that Child was a CHINS and that they had a substance abuse problem. In November 2016, the trial court issued a dispositional order directing Parents to participate in various services. DCS referred Parents for outpatient and residential substance abuse treatment, supervised parenting time, drug screens, and a residential detoxication program. As detailed more fully below, after a hearing on January 23, 2017, the trial court found Parents in contempt of the dispositional order and sentenced them to sixty days of incarceration, to be stayed on the condition of full compliance with the order.[1]

[4] In March 2017, the CHINS cases were closed for Jo.B. and Ja.B., who at that time were living with their biological father. On July 5, 2017, DCS filed a petition to involuntarily terminate Parents' parental rights to Child. On October 12, 2017, the trial court held a factfinding hearing, during which DCS called Parents as witnesses in its case in chief over their objections. On October

---

[1] On that same date, a contempt hearing was also held in Jo.B.'s and Ja.B.'s CHINS cases. Mother admitted that drug screens administered between September and December of 2016 showed that she had used heroin, marijuana, suboxone, and hydrocodone. Father admitted that drug screens administered between September and December of 2016 showed that he had used heroin, marijuana, and cocaine. "He also admitted that he had failed to attend substance abuse therapy and was removed from that program due to having failed to attend." Appealed Order at 2. He further admitted that he had missed six visits with the children in November 2016.

30, 2017, the court issued an order setting out the foregoing undisputed facts and the following additional findings:[2]

> 34. Shannon Trancoso was selected as the Court Appointed Special Advocate (CASA) for Child, as of October 28, 2016.
>
> 35. Ms. Trancoso has observed interaction between Child, Mother and Father.
>
> 36. During the course of Child's CHINS case, Ms. Trancoso has spoken with Mother about her addiction issues. Mother has expressed to Ms. Trancoso that her addiction started at the age of nineteen (19). Mother is now twenty-five (25) years old. Mother was not specific about which drug or drugs she was abusing.
>
> 37. Mother has expressed to Ms. Trancoso a desire to not be an addict.
>
> 38. Father has expressed to Ms. Trancoso that he does not like the "position" he is in currently.
>
> 39. Ms. Trancoso has not seen Child or his parents since February, 2017.
>
> 40. Patrice Mabry is employed as a Family Case Manager (FCM) for the DCS, and was assigned to Jo.B.'s and Ja.B[.]'s CHINS cases.
>
> ….
>
> 42. At some point during Child's CHINS case, FCM Mabry was assigned to that case as well.

---

[2] We have replaced references to the parties' names where appropriate.

....

44. Both Mother and Father admitted to FCM Mabry that they had substance abuse issues.

....

46. On some date that was not disclosed, FCM Mabry took Father to Tara Treatment Center, for inpatient treatment. Father was not admitted into the treatment program due to not having his diabetes condition under control.

....

52. Tom Pennington is an addictions counselor for Meridian Services.

53. Mr. Pennington interacted with Mother through the attempted provision of "IOP" or intensive outpatient therapy.

54. IOP sessions are held three (3) times per week; three (3) hours per session.

55. Mother was involved in Mr. Pennington's services from December, 2016 through February, 2017.

56. In December, 2016, Mother attended one (1) appointment with Mr. Pennington, where they discussed her substance abuse issues, and where they determined that she should start action IOP sessions after the first of the year.

57. During IOP sessions in January, 2017, Mother was somewhat resistant to the program, but warmed up to it and participated well in sessions.

58. During the January sessions, Mother admitted that she was

using marijuana, xanax, and opiates.

59. In February, 2017, Mother's attendance at IOP sessions dropped off. Mr. Pennington called Mother to encourage her attendance, but she stopped attending.

60. In August, 2017, Mother attended three (3) or four (4) sessions of IOP, but has not attended since then.

61. Mother has not completed the IOP program.

62. At a hearing held on January 23, 2017, Mother admitted that she had used heroin between November 4 and December 27, 2016.

63. At the same hearing, Father admitted that he had used heroin, marijuana, and cocaine between November 9 and December 19, 2016. He also admitted that he had failed to attend substance abuse therapy at Meridian Health Services, and had failed to visit Child six (6) times in November 2016.

64. Based upon the admissions described above, the Court concluded that Mother and Father were both in contempt of Court for not complying with the Dispositional Order.

65. Jessica Bell is a Behavioral Clinician for Meridian Services.

66. Ms. Bell was assigned to provide services for Mother in January, 2017, and served as Mother's "case manager."

67. Ms. Bell worked with Mother to help her identify "triggers" to her drug use/abuse. She also worked with Mother to help her find coping skills to prevent drug use/abuse.

68. At some time during Ms. Bell's involvement as case manager, Mother told her that she had been abusing suboxone

and marijuana.

69. Mother did not attend all of her appointments with Ms. Bell.

70. Mother was engaged and motivated during the appointments she did attend.

7|. Prior to this trial, the last time Mother attended an appointment with Ms. Bell was toward the end of August, 2017.

….

78. Jeremy Bane is a home-based services case manager for Wernle Family and Children Treatment.

79. In late June, 2017, Mr. Bane received a referral from the DCS to provide supervised parenting time/visitation services for Mother and Father.

….

85. Mr. Bane has observed Mother and Father to be compliant, to communicate well, and to be nurturing and caring toward Child. He has observed the parents to select age appropriate activities for their child.

86. Mr. Bane has had no concerns about how the parenting time sessions have gone.

87. Mr. Bane tries to encourage the parents to work on their rehabilitation needs. and even took Father to the Richmond State Hospital on September 25, 2017 in an effort to enter into a rehab program at that facility. Following a drug screen in the admission process, Father was not admitted into the State Hospital program.

88. If parental rights are terminated, the DCS plans for Child to

be adopted by his aunt, … with whom he has been placed since shortly after his birth.

….

94. Despite the existence of a child support order, [Child's aunt] has not received any child support payments from Mother or Father to assist her in caring for Child.

95. Mother has been unemployed since 2015.

96. Mother has three (3) children.

97. None of Mother's children lives with her at this time. Child is placed with a relative. Ja.B. and Jo.B. live with their father.

98. Father is thirty-two (32) years old.

99. Father has two (2) children, including Child.

100. Neither of Father's children lives with him.

Based upon these findings. the Court concludes that the DCS has sustained the Petition by clear and convincing evidence; more specifically that:

….

2. Child has been removed from both parents, for at least six (6) months, under the Dispositional Order in his Child in Need of Services (CHINS) case.…

3. Child was removed from his parents' care shortly after birth. and has continuously remained outside of their care since then, because both parents were abusing drugs that necessarily impaired their ability to care for their child. There remains a greater than reasonable probability that the parents' respective

addictions to drugs, and continued abuse of drugs, are not likely to be remedied.

4. Ending the relationship between Child and his parents, and providing for a stable and sober parent or parents is the best course of action for this child and termination of parental rights is in Child's best interest.

5. There is a satisfactory plan for Child's care and treatment, that plan being adoption.

IT IS THEREFORE ORDERED that the parent-child relationship [between Parents and Child] is hereby terminated ….

Appealed Order at 3-7 (citation to exhibit omitted). Parents now appeal.

# Discussion and Decision

[5] "Parental rights are of a constitutional dimension, but the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re D.P.*, 27 N.E.3d 1162, 1165 (Ind. Ct. App. 2015). "The purpose of terminating parental rights is not to punish parents, but to protect their children." *Id*. "The involuntary termination of parental rights is the most extreme sanction a court can impose on a parent because termination severs all rights of that parent to his or her children." *In re R.A.*, 19 N.E.3d 313, 321 (Ind. Ct. App. 2014), *trans. denied* (2015). "For this reason, termination is intended as a last resort, available only when all other reasonable efforts have failed." *Id*.

[6]    A petition for the involuntary termination of parental rights must allege in pertinent part:

> (A) that one (1) of the following is true:
>
>> (i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> ….
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (emphasis added).  DCS must prove "each and every element" by clear and convincing evidence.  *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2.  If the trial court finds that the

allegations in the petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[7] "Our standard of review is highly deferential in cases concerning the termination of parental rights." *D.P.*, 27 N.E.3d at 1165.

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92-93 (Ind. Ct. App. 2014) (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re W.M.L.*, 82 N.E.3d 361, 367 (Ind. Ct. App. 2017).

[8] Parents contend that the trial court clearly erred in concluding that there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied[3] and that termination is in Child's best interests. They also

---

[3] As stated above, the trial court concluded that there was a "greater than reasonable probability" that the conditions that resulted in Child's removal will not be remedied. Appealed Order at 7. We take this to mean that DCS surpassed its statutory burden. We express no opinion on this assessment.

claim that their due process rights were violated by being called as witnesses by DCS at the factfinding hearing.

## Section 1 – The trial court's order is not clearly erroneous.

[9] To determine whether the conditions that resulted in a child's removal will not be remedied, the trial court engages in a two-step analysis. *In re A.W.*, 62 N.E.3d 1267, 1273 (Ind. Ct. App. 2016). "The court first identifies the conditions that led to removal and then determines whether there is a reasonable probability that those conditions will not be remedied." *Id.* "The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Id.* (quotation marks omitted). "Trial courts have discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination, and the court may find that a parent's past behavior is the best predictor of her future behavior." *Id.* The trial court may consider services offered by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. "Where there are only temporary improvements and the pattern of conduct shows no overall progress, the court might reasonably find that under the circumstances, the problematic situation will not improve." *In re Involuntary Termination of Parent Child Relationship of A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005). DCS "is not

required to provide evidence ruling out all possibilities of change; rather, it need only establish that there is a reasonable probability that the parent's behavior will not change." *A.D.S.*, 987 N.E.2d at 1157 (quotation marks omitted).

[10] In determining what is in a child's best interests, the trial court is required to look to the totality of the evidence. *In re A.G.*, 45 N.E.3d 471, 479 (Ind. Ct. App. 2015), *trans. denied* (2016). In so doing, the court must subordinate the interests of the parents to those of the child. *Id.* "The court need not wait until the child is irreversibly harmed before terminating the parent-child relationship." *Id.*

[11] Parents challenge only eight of the trial court's one hundred findings (numbers 36, 37, 38, 44, 46, 58, 62, and 63), claiming that they are insufficiently specific to support the court's conclusions that there is a reasonable probability that the conditions that resulted in Child's removal, i.e., Parents' addiction to and abuse of drugs, will not be remedied and that termination is in Child's best interests.[4] They assert that "[w]hat was offered at the fact finding hearing was a general framework of some substance abuse, but it was unclear when drugs were used, over what time period, and whether substance abuse remained a problem at the time of the fact finding hearing." Appellants' Br. at 15-16.

[12] We disagree. Parents do not specifically challenge the CASA's testimony regarding Mother's admission to a six-year history of drug addiction. During

---

[4] We treat Parents' best interests argument as coextensive with their remedied conditions argument.

the CHINS proceedings involving Child and his half siblings, which started in March 2016, Parents admitted to using (and/or testing positive for using) heroin, cocaine, meth, marijuana, Xanax, and opiates up to and including January 2017. Parents admitted to having a substance abuse problem in September 2016 and only sporadically attended court-ordered substance abuse therapy and treatment. Mother stopped attending sessions two months before the October 2017 factfinding hearing, and a drug screen prevented Father from enrolling in a rehabilitation program less than three weeks before the hearing. Based on the trial court's findings and the reasonable inferences to be drawn therefrom, we cannot say that the trial court clearly erred in concluding that there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied and that termination is in Child's best interests.

## Section 2 – Parents' due process rights were not violated as a result of being called as witnesses by DCS.

[13] When DCS called Parents as witnesses during its case in chief, they objected on the basis that they would be asked incriminating questions regarding drug use and other matters. The trial court overruled the objections and noted that Parents' counsel could object to such questions on Fifth Amendment grounds, which counsel did.[5] The trial court sustained those objections and stated that it would decline to draw negative inferences from Parents' refusal to testify. *Cf.*

---

[5] *See* U.S. CONST., amend. V ("No person … shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law …．").

*Hardiman v. Cozmanoff*, 4 N.E.3d 1148, 1152 (Ind. 2014) (noting that Fifth Amendment protects individual against being involuntarily called as witness against himself in criminal prosecution but "'does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'") (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

[14] On appeal, Parents argue that the termination order should be reversed because the trial court's overruling of their objections to being called as witnesses violated their due process rights. DCS argues, and we agree, that reversal is not required because Parents cannot demonstrate harm resulting from any alleged due process violation, given that the trial court declined to draw negative inferences from their refusal to answer certain questions on Fifth Amendment grounds. *See* Ind. Appellate Rule 66(A) ("No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in

light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties."). Therefore, we affirm.[6]

[15] Affirmed.

Bailey, J., and Brown, J., concur.

---

[6] We reject Parents' argument that "procedural due process should afford parents like Mother and Father the ability to not be called as witnesses against themselves, pursuant to the rights enshrined in the Fifth Amendment as incorporated to the states by the Fourteenth Amendment." Appellants' Br. at 28. This argument is based on the faulty premise that termination proceedings are quasi-criminal in nature. *Cf. In re E.D.*, 902 N.E.2d 316, 322 (Ind. Ct. App. 2009) ("The due process safeguards afforded a defendant in a criminal trial are not applicable to a parent in a civil termination proceeding. Indeed, our Indiana Supreme Court has recognized that 'criminal prosecutions and termination proceedings are substantially different in focus. The resolution of a civil juvenile [termination] proceeding focuses on the best interests of the child, not on guilt or innocence as in a criminal proceeding.'") (alteration in *E.D.*) (quoting *Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1039 (Ind. 2004)), *trans. denied*.