## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

William Elliott Happel
Thomasson, Thomasson, Long
 & Guthrie, P.C.
Columbus, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of: K.D. (Minor Child) and S.B. (Father)

S.B. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

October 21, 2020

Court of Appeals Case No. 20A-JT-1034

Appeal from the Bartholomew Circuit Court

The Honorable Kelly Benjamin, Judge

The Honorable Heather Mollo, Magistrate

Trial Court Cause No. 03C01-1904-JT-1831

**Vaidik, Judge.**

# Case Summary

[1] S.B. ("Father") appeals the termination of his parental rights to K.D. ("Child"). We affirm.

# Facts and Procedural History

[2] Father and N.D. ("Mother") (together "Parents") are the biological parents of Child, born in November 2016. Mother has two older children from prior relationships. Mother's parental rights were also terminated, but she has not appealed, so we limited our narrative to the facts relevant to Father.

[3] In December 2017, the Department of Child Services (DCS) received a report that Mother was leaving Child with various relatives and abusing illegal substances. A month later, DCS received another report that Mother was homeless and abusing illegal substances. An Emergency Custody Order was issued, and DCS removed Child from Mother's care on January 18, 2018. The next day, DCS filed a petition alleging Child was a Child in Need of Services (CHINS). Child was placed with C.D., the father of one of his half-siblings. Father's whereabouts at the time were unknown. He was aware that Child had been removed but did not come forward because there was a warrant for his arrest for possession of methamphetamine and false informing. In April, Father was arrested on the warrant, as well as for possession of methamphetamine, resisting law enforcement, and false informing. He appeared in custody at the CHINS initial hearing in May. In June, Father admitted Child was a CHINS due to his incarceration and substance abuse. He also agreed to participate in

services, including a substance-abuse evaluation and inpatient treatment. While incarcerated, Father participated in Fatherhood Engagement classes and underwent substance-abuse and mental-health assessments through Centerstone. In August, Father pled guilty to two counts of Level 6 felony possession of methamphetamine, one count of Class B misdemeanor false informing, and one count of Class A misdemeanor resisting law enforcement. A month later, he was sentenced to probation and released on "house arrest." Tr. p. 28. He then began supervised visitation with Child. However, while on probation, Father twice tested positive for methamphetamine—once in October and once in November—and was arrested in late November for possession of a syringe. In January 2019, Child's permanency plan was changed to adoption with a concurrent plan of reunification.

[4]     Father remained in custody until March 2019, when the court in the criminal case accepted his admission to violating probation and returned him again to probation, with an order to successfully complete the Recovery Enables a Life For Men (REALM) program, a six-month residential substance-abuse program. On March 21, Father began the REALM program, where he was diagnosed with a severe methamphetamine-use disorder. While at the REALM program, Father had twice-weekly visits with Child, then two-and-a-half years old. Father also participated in Fatherhood Engagement classes, where his therapist felt he showed "insight." Appellant's App. Vol. II p. 15. Father acknowledged he was in a cycle of incarceration, release, relapse, and then reincarceration. He also

stated that Mother added to his substance-abuse issue and that he would need to stay away from her to maintain sobriety.

[5] On April 1, DCS filed a petition to terminate Parents' rights. Shortly thereafter, Father was informed of the termination petition at a Child and Family Team meeting and was told that he should continue with the REALM program, that DCS services would remain open to him, and that no changes would occur unless a termination-of-rights order was issued. Family case manager Arielle Beller "explained [the] expectations for [Father and] the importance of where the case was in the timeframe for permanency." *Id.* at 16. But on May 8, Father left the REALM program without permission because he "wanted to use drugs" and felt that Child "was gonna get taken no matter what" he did. Tr. pp. 32, 176. Leaving the REALM program "was considered an escape," and therefore the State filed a motion to revoke Father's probation in the criminal case, and a warrant was issued for his arrest. Appellant's App. Vol. II p. 15. Later that month, Father was arrested on the warrant.

[6] The termination trial occurred over two days in June and August 2019. Father testified that he was still struggling with substance abuse but that he did not feel his substance abuse impacted his parenting because when he's on drugs he still "pay[s] attention to Child," is "loving," and "take[s] care of him." Tr. p. 33. However, he said his incarcerations did have a negative impact on Child. Child's guardian ad litem (GAL), Neile McQueen, testified that it is in Child's best interests to terminate Father's rights, as Child needs stability and Father

had "multiple opportunities to try to make those changes that are necessary to provide that stable home, and [had not] done so." *Id.* at 124.

[7] In April 2020, the trial court terminated Parents' rights.

[8] Father now appeals.

# Discussion and Decision

[9] Father argues that DCS did not prove the statutory requirements for termination by clear and convincing evidence. When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re K.T.K.*, 989 N.E.2d 1225, 1229 (Ind. 2013). Rather, we consider only the evidence and reasonable inferences that are most favorable to the judgment of the trial court. *Id.* When a trial court has entered findings of fact and conclusions of law, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* To determine whether a judgment terminating parental rights is clearly erroneous, we review whether the evidence supports the trial court's findings and whether the findings support the judgment. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016).

[10] A petition to terminate parental rights must allege, among other things:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for

placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *In re K.T.K.*, 989 N.E.2d at 1231. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

# I. Conditions Remedied

Father challenges the trial court's conclusion that there is a reasonable probability that the conditions resulting in Child's removal and continued placement outside the home will not be remedied. In determining whether the conditions resulting in a child's removal will not be remedied, the trial court engages in a two-step analysis. First, the trial court must ascertain what conditions led to the child's placement and retention in foster care. *In re K.T.K.*, 989 N.E.2d at 1231. Second, the trial court must determine whether there is a

reasonable probability those conditions will not be remedied. *Id.* "The trial court must consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Id.*

[12] Here, Child remained out of Father's care because of his incarcerations and substance abuse. Father now argues whether there is a reasonable probability these conditions will be remedied "remains to be seen" because "DCS filed its petition to terminate Father's parental rights before the effectiveness of the [substance abuse] treatment could be judged." Appellant's Br. p. 12. We disagree. Over the nineteen months from the filing of the CHINS petition until the termination hearing, Father made no progress toward providing Child a safe and stable home. Father was incarcerated three times throughout the proceedings due to his substance abuse. Within two months of being released, Father tested positive twice for methamphetamine and was rearrested for possession of a syringe. The following year, Father was given another opportunity to work on his substance abuse through the REALM program. After two months, despite knowing the termination hearing was imminent, Father left the REALM program to do drugs. At the time of the termination hearing, Father admitted he still struggled with substance abuse but said he did not believe his substance abuse negatively affected his parenting, an attitude that "strongly suggests" Father will not "have the necessary motivation to change for the sake of [Child]." Appellant's App. Vol. II p. 16.

[13] As such, the trial court did not err when it concluded there is a reasonable probability the conditions leading to Child's removal will not be remedied.[1]

## II. Best Interests

[14] Father also challenges the trial court's conclusion that termination is in the best interests of Child. In determining the best interests of a child, the trial court must look at the totality of the evidence. *See In re A.B.*, 887 N.E.2d 158, 167-68 (Ind. Ct. App. 2008). The trial court must subordinate the interests of the parents to those of the child. *Id.* at 168. Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. *In re K.T.K.*, 989 N.E.2d at 1235. A trial court need not wait until a child is irreversibly harmed such that his or her physical, mental, or social development is permanently impaired before terminating the parent-child relationship. *Id.* Additionally, a child's need for permanency is a "central consideration" in determining the best interests of a child. *Id.*

[15] Father argues that termination is not in Child's best interests because "[n]one of the evidence presented at trial indicated that Father lacked the knowledge or ability to safely and effectively care for [Child]." Appellant's Br. p. 11. We

---

[1] Because we affirm the trial court's conclusion that there is a reasonable probability that the conditions resulting in Child's removal will not be remedied, we need not address its alternate conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of Child. *See In re A.G.*, 45 N.E.3d 471, 478 (Ind. Ct. App. 2015) (Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and requires trial courts to find only one of the two requirements of subsection (b) has been established by clear and convincing evidence), *trans. denied*.

disagree. Father has a severe methamphetamine-use disorder. Father admitted he is in a cycle of being incarcerated, getting released, relapsing, and then getting incarcerated again. As noted above, at no point in the nineteen months before the termination hearing did Father demonstrate the ability to break this cycle. Father was arrested three times throughout the CHINS proceedings and quickly relapsed both times he was released from incarceration. And his belief that he can safely parent while abusing substances suggests this cycle will continue.

[16] Furthermore, Child is in a loving and stable home with his foster family, which includes two of his half-siblings. Child, now almost four, has been with his foster family for almost three years, and the foster family plans to adopt him. McQueen, Child's GAL, believes it is in Child's best interests to terminate to provide Child with stability. Father has not shown he can provide any stability. As such, the trial court did not error when it concluded it is in Child's best interests to terminate the parent-child relationship.

[17] Affirmed.

Bailey, J., and Weissmann, J., concur.