## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 27 2018, 7:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Matthew J. McGovern<br>Anderson, Indiana | Curtis T. Hill, Jr.<br>Attorney General<br><br>Katherine A. Cornelius<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.S.M. (Minor Child) and<br><br>A.M.M. (Mother),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br><br>*Appellee-Petitioner* | April 27, 2018<br><br>Court of Appeals Case No.<br>22A01-1710-JT-2550<br><br>Appeal from the Floyd Circuit Court<br><br>The Honorable Robert L. Bennett, Senior Judge<br><br>Trial Court Cause No.<br>22C01-1705-JT-414 |

**Crone, Judge.**

## Case Summary

[1] A.M.M. ("Mother") appeals the trial court's order involuntarily terminating her parental rights to her minor child, A.S.M. ("Child"). Mother contends that the trial court's order is clearly erroneous in several respects. Finding no error, we affirm.

## Facts and Procedural History

[2] Child is the biological child of Mother and S.M. ("Father") and was born in June 2008. In June 2015, the Indiana Department of Child Services ("DCS") filed a petition alleging that Child was a child in need of services ("CHINS") based on Mother's and Father's substance use, domestic violence, and concerns of sexual abuse by Father. After an initial hearing in July 2015, the trial court appointed a court-appointed special advocate ("CASA") for Child and ordered Father to have no contact with Child. In August 2015, the trial court issued an emergency order for Child to be removed from Mother's home based on concerns regarding Mother's use of methamphetamine. After a hearing in October 2015, during which Mother admitted that Child was a CHINS, the trial court issued an order finding Child to be a CHINS based on "substance abuse issues within the home and sexual abuse by" Father. Ex. Vol. at 24. As set forth more fully below, the trial court also issued a dispositional order imposing numerous requirements on Mother and Father.

[3] In May 2017, DCS filed a petition to involuntarily terminate Mother's and Father's parental rights. In September 2017, the trial court held a factfinding

hearing and issued a bench ruling in favor of DCS. In December 2017, the court issued a written order that reads in pertinent part as follows:

12. A dispositional order was entered on November 2, 2015 which required Mother and Father to participate in the following services:

a. Contact case manager;
b. Notify the case manager of pertinent changes;
c. Notify case manager of arrest or criminal charges[;]
d. Case manager to visit home;
e. Enroll in programs recommended;
f. Keep all appointments;
g. Sign releases or authorizations to monitor compliance;
h. Maintain suitable housing;
i. Maintain a suitable source of income, such as employment;
j. Assist with protection plan for child to protect child from abuse and neglect;
k. Prohibit the use of drugs;
1. Obey the law;
m. Complete a substance abuse assessment and follow all recommendations;
n. Random drug screens;
o. Refrain from domestic violence[.]

13. As part of the dispositional order entered on November 2, 2015 Mother only was required to participate in the following services:

a. Case manager to visit child;
b. Ensure child is not removed from the county;
c. Attend to all of child's medical and mental needs;
d. Attend all scheduled visitations;
e. Help care for child and provide food clothing and supervision;
f. Not allow any person with a no contact order to have access or communicate with child;

g. Receive caregiver approval from case manager;
h. Provide child with a safe, secure and nurturing environment.

14. Mother has failed to substantially comply with the dispositional order and specifically, Mother:

a. Failed to complete a drug abuse assessment or drug rehabilitation program;
b. Failed to gain sobriety and continued to abuse methamphetamine during the life of this case with the last drug screen dated September 1, 2017 showing positive for methamphetamine, less than a month before the final TPR hearing;
c. Failed to maintain suitable housing and was homeless for a significant amount of time during the pendency of this matter;
d. Failed to maintain employment and remained largely unemployed throughout the pendency of this matter;
e. Failed to submit to random drug testing as requested and only completed 65 drug screens out of more than 250 that should have been taken;
f. Failed to attend all scheduled visitations.

….

17. CASA filed a report that supports the termination of parental rights in this instance.

18. The plan of adoption is suitable and in the best interests of the Child.

….

24. Based upon the foregoing, the Court concludes that DCS has met its burden of proof, proving its petition to terminate Mother's and Father's parental rights by clear and convincing evidence that:

a.  The child has been removed from the home and custody of his parents and has been under the supervision of DCS for at least fifteen (15) of the most recent twenty-two (22) months, and has been removed from the Child's Mother and Father for more than six (6) months pursuant to the terms of the dispositional decree.

b. There is a reasonable probability that:

i.  The conditions which resulted in the child's removal and continued placement outside the home will not be remedied by Mother or Father; or

ii.  That continuation of the parent-child relationship poses a threat to the Child's wellbeing.

c.  Termination of parental rights is in Child's best interests.

d.  There is a satisfactory plan for the care and treatment of the Child, that being Adoption.

….

26.  All rights, powers, privileges, immunities, duties, and obligations concerning the Child, including the right to consent to adoption, pertaining to that relationship are permanently terminated.

Appealed Order at 2-5.  Mother now appeals.

# Discussion and Decision

Parental rights are protected by the Fourteenth Amendment to the United States Constitution, but they are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate

parental rights. *In re W.M.L.*, 82 N.E.3d 361, 365 (Ind. Ct. App. 2017). Thus, parental rights may be terminated when a parent is unable or unwilling to meet her parental responsibilities. *Id*. A petition for the involuntary termination of parental rights must allege in pertinent part:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

….

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (emphasis added).  DCS must prove "each and every element" by clear and convincing evidence.  *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009); Ind. Code § 31-37-14-2.  If the trial court finds that the allegations in the petition are true, the court shall terminate the parent-child relationship and enter findings of fact that support the conclusions required by that determination.  Ind. Code § 31-35-2-8(a), -(c).

[5]  "Our standard of review is highly deferential in cases concerning the termination of parental rights."  *In re D.P.*, 27 N.E.3d 1162, 1165 (Ind. Ct. App. 2015).

> We neither reweigh evidence nor assess witness credibility.  We consider only the evidence and reasonable inferences favorable to the trial court's judgment.  Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review:  we first determine whether the evidence supports the findings and then determine whether the findings support the judgment.  In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92-93 (Ind. Ct. App. 2014) (citations omitted).

## Section 1 – The trial court's conclusion regarding DCS's plan for Child's care and treatment is not clearly erroneous.

[6]     Mother first contends that the trial court's conclusion that there is a satisfactory plan for Child's care and treatment is clearly erroneous because "[n]owhere in the findings does the trial court outline any specific facts about the DCS plan, the success of its implementation to date, or how the plan has served [Child's] best interests." Appellant's Br. at 20. It is well settled that a plan for the care and treatment of a child need not be detailed, as long as it offers a general sense of the child's direction after the parent-child relationship is terminated. *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014), *trans. denied*. A DCS plan is satisfactory if the plan is to attempt to find suitable parents to adopt the child. *Id*. "In other words, there need not be a guarantee that a suitable adoption will take place, only that DCS will attempt to find a suitable adoptive parent." *Id*. Mother's demand for more specific findings is unwarranted, and therefore we conclude that the trial court's order is not clearly erroneous in this regard.

## Section 2 – Finding 14 is not clearly erroneous.

[7]     Next, Mother claims that finding 14 improperly focuses on her "historical failures" and "does not at all address whether the conditions which led to

[Child's] removal would be remedied ...." Appellant's Br. at 23.[1]  She also claims that the finding does not address Child's best interests.  We disagree.

[8]    To determine whether the conditions that resulted in a child's removal will not be remedied, the trial court engages in a two-step analysis.  *In re A.W.*, 62 N.E.3d 1267, 1273 (Ind. Ct. App. 2016).  "The court first identifies the conditions that led to removal and then determines whether there is a reasonable probability that those conditions will not be remedied."  *Id*.  The court then judges a parent's fitness at the time of the termination hearing, "taking into consideration evidence of changed conditions, and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation."  *Id*. (quotation marks omitted).  "Trial courts have discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination, and the court may find that a parent's past behavior is the best predictor of her future behavior."  *Id*.  The trial court may consider services offered by DCS and the parent's response to those services as evidence of whether conditions will be remedied.  *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*.  DCS "is not required to provide evidence ruling out all possibilities of change; rather, it need only establish that there is a reasonable

---

[1] Mother also argues that the finding does not address whether she is a threat to Child's well-being.  Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need not address this argument.

probability that the parent's behavior will not change." *Id.* (quotation marks omitted).

[9] The condition that resulted in Child's removal was Mother's methamphetamine use. The evidence supports the trial court's findings that Mother continued to abuse meth and tested positive for that substance less than a month before the termination hearing. The evidence also supports the trial court's findings that Mother failed to complete a drug abuse assessment or drug rehabilitation program and completed less than a third of the random drug screens that should have been taken. Finding 14 is supported by the evidence and also supports the trial court's conclusion that there is a reasonable probability that Mother's meth use will not be remedied. Accordingly, we cannot say that it is clearly erroneous in this regard.

[10] In determining what is in a child's best interests, the trial court must look to the totality of the evidence and subordinate the interests of the parent to those of the child. *In re A.G.*, 45 N.E.3d 471, 479 (Ind. Ct. App. 2015), *trans. denied* (2016). "The court need not wait until the child is irreversibly harmed before terminating the parent-child relationship." *Id.* The evidence supports the trial court's findings regarding Mother's continued meth use, unstable housing and employment history, and failure to attend all scheduled visitations with Child. Finding 14 is supported by the evidence and also supports the trial court's conclusion that termination is in Child's best interests. Therefore, we cannot say that it is clearly erroneous. The trial court's order is affirmed.

[11]     Affirmed.

Bailey, J., and Brown, J., concur.