## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2018, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel G. Foote
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of The Termination of Parent-Child Relationship of:

D.G. *(Minor Child)*

and

K.A. *(Mother)*,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

October 31, 2018

Court of Appeals Case No.
18A-JT-1058

Appeal from the Marion Superior Court

The Honorable Gary Chavers, Judge Pro Tem

The Honorable Larry Bradley, Magistrate

Trial Court Cause No.
49D09-1709-JT-843

**Robb, Judge.**

# Case Summary and Issues

[1] K.A. ("Mother") appeals the termination of her parental rights as to D.G. ("Child") and raises three issues on appeal, which we consolidate and restate as the following two issues: (1) whether the juvenile court's judgment terminating Mother's parental rights was clearly erroneous; and (2) whether the termination proceeding was fundamentally fair when Mother represented herself at the fact-finding hearing. Concluding the juvenile court's judgment was not clearly erroneous and Mother knowingly and voluntarily waived her right to counsel, we affirm.

# Facts and Procedural History

[2] Child was born on December 11, 2010, and suffers from ADHD, autism, and a metabolic disorder which requires continuing medical care. On August 1, 2014, Child was removed from Mother because Mother was arrested for shoplifting, tested positive for heroin and marijuana, and failed to take Child to Child's medical appointments. On August 4, 2014, the Indiana Department of Child Services ("DCS") filed a petition alleging that Child was a Child in Need of Services ("CHINS"). At the initial hearing, the juvenile court found Mother to be indigent and granted her request for appointed counsel.

[3] Child began a temporary trial visit with Mother around August 21, 2014, but by September 25, 2014, the juvenile court had again removed Child from Mother because Mother began testing positive for drugs soon after the trial visit began.

Mother and DCS reached an Agreed Entry in which Child was adjudicated a CHINS on October 30, 2014, and Mother was ordered to participate in home-based case management and therapy, complete a substance abuse evaluation and follow treatment recommendations, and undergo random drug screens. Child began a second temporary trial visit on July 5, 2016, after Mother began to have negative drug screens, but Child was again removed from the home on September 8 after Mother tested positive for drugs.

[4] Following a permanency hearing on January 19, 2017, the juvenile court changed the permanency plan for Child from reunification to adoption finding, in part:

1. On [sic] DCS filed a petition alleging that the child was in need of services due to [Mother] being arrested for shoplifting and because of her substance abuse.

2. On August 1, 2014 [Child] was removed from his mother's care and placed in foster care. He was returned to her care from August 21, 2014 until September 25, 2014 when [Child] was removed again because of [Mother's] substance use and placed in foster care. [Child] was returned to [Mother's] care from July 6, 2016 until September 8, 2016 and was removed again due to [Mother's] drug use and placed in relative care until November 2016 when [Child] was placed in foster care.

* * *

5. [Mother] was positive for methamphetamine in October 2016. She was recently evicted from a cousin's home, and tested positive for methamphetamine and THC today.

6. [Mother] has engaged in parenting time only 3 times since November 2016.

* * *

8.    [Child] has medical needs and it has been difficult to find a pre-adoptive home for him.

Exhibits, Volume I at 179.

[5]    The juvenile court held another permanency hearing on June 29, 2017, and found that Mother failed to participate in services and screened positive for methamphetamine. DCS subsequently filed its Verified Petition for Involuntary Termination of Parent-Child Relationship on September 22. At the initial hearing on October 20, Mother engaged in a colloquy with the court in which she stated she would proceed pro se and the juvenile court explained the consequences of doing so. As a result, the juvenile court found Mother "does not plan to engage counsel and . . . determine[d] that [Mother] freely and voluntarily waive[s] counsel." Appellant's Appendix, Volume II at 30. A fact-finding hearing was held on January 17, 2018, and on April 9, 2018, the juvenile court issued its order terminating Mother's parental rights, finding the following:

> 2. A Child in Need of Services Petition "CHINS" was filed on [Child] on August 4, 2014, . . . on allegations that [Mother] tested positive for heroin and marijuana, that the home was in deployable [sic] condition, and that [Child] was being medically neglected over [Child's] special needs. [Mother] had also recently been arrested for shoplifting.
>
> 3. Although [Child] was removed from the home at the August 4, 2014, initial hearing, [Child] was placed back in the home on August 21, 2014, on temporary in-home trial visitation.
>
> 4. Due to [Mother] testing positive for marijuana, [Child] was again ordered detained and removed from the home on September 25, 2014.

* * *

7. [Mother] was up and down with her participation in services and tested for heroin, methamphetamine, cocaine, marijuana and alcohol at times.

8. In 2016, [Mother] was participating in services, and started testing drug negative, to the point that [Child] was placed in-home on July 5, 2016.

9. After the in-home placement, the IDCS received a June 29, 2016 drug screen positive for amphetamine and methamphetamine. After [Mother] test[ed] positive for methamphetamine, cocaine, and alcohol in August of 2016, [Child] was removed from the home on September 8, 2016. [Child] was never placed back with [Mother].

10. [Child] had been removed from [Mother] for at least six (6) months under a dispositional decree, and was placed outside the home and under the care and supervision of the IDCS for at least fifteen (15) of the most recent twenty-two (22) months, prior to this termination action being filed on September 22, 2017.

11. [Mother] continued to test positive for drugs and her participation in services dropped off.

12. Even though therapy was referred eight times, [Mother] failed to successfully complete therapy due to her non-participation.

13. Home based case management was referred at least four times to address instability and transportation.

14. [Mother] has not had independent stable housing during the CHINS case. She has stayed with relatives and currently resides with her mother-in-law. At one point she was living out of a car.

15. [Mother] has not been able to maintain employment, having gone through various jobs. She testified she was working at Family Dollar though the family case manager had no knowledge of that employment.

16. [Mother] did obtain a vehicle twice during the CHINS case, but both cars were repossessed.

17. Case management is still an open referral but is close to being unsuccessfully closed.

18. The most concerning safety issue is [M]other's inability to maintain sobriety. She has had periods of sobriety during the CHINS case but has relapsed. She has admitted to drug use two weeks prior to the trial in this matter.

19. Four referrals were made for a substance abuse assessment and three referrals were made for the recommended treatment program. If a program was completed, there has been a subsequent relapse.

20. [Mother] speaks with [Child] telephonically, but has only visited [Child] once in the past year.

21. [Mother] was engaged with [Child] during the last parenting time session but [Child] was distrustful of her. A bond does exist between [Child] and [Mother].

* * *

23. [Child's] disruptive behavior worsens after [Child] speaks with [Mother].

24. [Child] craves stability. Instability affects [Child] adversely.

25. [Child's] placement is not pre-adoptive due to [Child's] caregiver not being able to meet [Child's] needs full time with another special needs child in the home.

26. [Child] is adoptable and a permanent placement is being sought.

27. There is a reasonable probability that the conditions that resulted in [Child's] removal and continued placement outside the home will not be remedied by [Mother] who has not remedied conditions of drug abuse and instability in the almost three and one-half years that have elapsed since [Child's] CHINS case was filed.

28. There is a reasonable probability that the continuation of the parent-child relationship poses a threat to [Child's] well-being in that it would pose as a barrier to obtaining permanency for

[Child] through an adoption after being a ward for so long. [Mother] cannot safely parent or meet [Child's] needs without successfully overcoming sobriety and stability issues.

29. Termination of the parent-child relationship is in the best interests of [Child]. Termination would allow [Child] to be adopted into a stable and permanent home where all of [Child's] needs will be safely met.

Appellant's App., Vol. II at 13-14. Mother now appeals.[1]

# Discussion and Decision

## I. Standard of Review

The Fourteenth Amendment to the United States Constitution protects parents' right to raise their children. *Bester v. Lake County Office of Family and Children*, 839 N.E.2d 143, 147 (Ind. 2005). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). However, these rights are not absolute and may be terminated when parents are unable or unwilling to meet their parental responsibilities. *In re D.D.*, 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004), *trans. denied*. When reviewing a termination of parental rights, we do not reweigh the evidence or judge the credibility of the witnesses and only consider the evidence and reasonable inferences most favorable to the judgment. *Id.*

---

[1] We note that Child's Father's parental rights were also terminated; however, he does not participate in this appeal and we have limited our recitation of the facts to those relevant to Mother.

Pursuant to Indiana Code section 31-35-2-8(c), the juvenile court entered findings of fact to support its conclusion regarding the termination of the parent-child relationship. When the juvenile court issues findings of fact and conclusions of law, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings, and then whether the findings support the judgment. *K.E. v. Indiana Dep't of Child Servs.*, 39 N.E.3d 641, 646 (Ind. 2015). We will set aside the juvenile court's judgment if it is clearly erroneous, *id*., namely, when we are firmly convinced a mistake has been made, *B.H. v. Indiana Dep't of Child Servs.*, 989 N.E.2d 355, 363 (Ind. Ct. App. 2013).

## II. Termination of Parental Rights

### A. Remedied Conditions

Mother argues the record fails to demonstrate the conditions which led to Child's removal will not be remedied or that the continuation of the parent-child relationship poses a threat to Child's well-being. To terminate parental rights, the State must demonstrate by clear and convincing evidence:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

* * *

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2); *see also* Ind. Code § 31-37-14-2 (stating burden of proof in termination proceedings). Because section 4(b)(2)(B) is written in the disjunctive, the juvenile court only had to find sufficient evidence to support one of the requirements in subsection (B) to terminate Mother's parental rights, in addition to the other requirements of section 4(b)(2). *B.H.*, 989 N.E.2d at 364. Here, the juvenile court found evidence supporting (2)(B)(i) *and* (2)(B)(ii). Mother challenges both findings.

[9] Because it is dispositive, we only examine the issue of whether the evidence shows that there is a reasonable probability that the conditions resulting in Child's removal or continued placement outside Mother's care will not be remedied. *Id*. To determine this, we engage in a two-step analysis. *In re V.A.*, 51 N.E.3d 1140, 1145 (Ind. 2016). First, we determine what conditions led to the child's placement outside of the home, and then whether there is a reasonable probability that those conditions will not be remedied. *Id*. In determining whether a reasonable probability that the conditions that led to removal of a child will not be remedied, a juvenile court should evaluate a parent's fitness to care for his or her child at the time of the termination hearing, as well as "habitual patterns of conduct to determine the probability of future

neglect or deprivation of the child" and services offered to the parent. *In re D.J.*, 755 N.E.2d 679, 684 (Ind. Ct. App. 2001), *trans. denied*.

[10] Here, the juvenile court found Child was initially removed from Mother "on allegations that [Mother] tested positive for heroin and marijuana, that the home was in deployable [sic] condition, and that [Child] was being medically neglected over [Child's] special needs. [Mother] had also recently been arrested for shoplifting." Appellant's App., Vol. II at 13.[2] The conditions that led to Child's removal indicate instability and Mother's inability to care for Child.

[11] Mother argues that the evidence at the fact-finding hearing demonstrates that she "experienced some interruptions, based in part on the death of her husband, illness and a hospitalization, the death of her husband in September of 2015, and a September 2016 bout with substance abuse." Brief of Appellant at 24. She argues she now has stable housing and employment and her case manager testified that she was fully engaged with Child and the two shared a bond. Mother concedes that while Mother's current case manager "did not feel that Mother had not yet reached the goals for her services, he testified that Mother

---

[2] As part of her argument that the record does not establish by clear and convincing evidence that the conditions that led to removal will not be remedied, Mother contends that although the State offered the original CHINS Petition into evidence at the fact-finding hearing, "there is no evidence in the record that Mother admitted to any of the specific allegations made in that Petition." Brief of Appellant at 23. She argues because the "Agreed Entry" in which Child was adjudicated a CHINS was not in the record, "it is difficult to ascertain what specific facts led to [Child's] placement outside the home[,]" and therefore, it would have been difficult for the juvenile court to conclude the conditions will not be remedied under the statute. *Id*. Mother correctly states the "Agreed Entry" was not admitted into evidence at the termination hearing; however, testimony by Shannon Taylor, Guardian ad Litem with Child Advocates, establishes the underlying conditions which led to Child's removal. *See* Transcript, Volume II at 99.

should have more time to engage in services, as it would increase the likelihood that she would address her issues, and that with additional services," she would be able to meet Child's needs. *Id.* However, the evidence presented at the fact-finding hearing revealed Mother's continued pattern of instability, supporting the juvenile court's finding that a reasonable probability exists that the conditions that led to Child's removal will not be remedied and its judgment terminating Mother's parental rights.

[12] As to Mother's substance abuse issues, she admitted to home-based care manager, Beth Lopez, that she had used methamphetamines, amphetamines, marijuana, alcohol, and snorted prescription pills in 2016. *See* Transcript, Volume II at 24. At the fact-finding hearing, Lopez testified she would not recommend reunification in this matter, citing Mother's inability to maintain sobriety as her "biggest concern[.]" *Id.* at 30. As she explained, with the "cycle of instability" that intermittent sobriety causes, it is difficult "to maintain stable housing, employment, be able to meet [Child's] needs medically. It would require [Mother] to be sober to transport [Child], attend school things, so sobriety would be my biggest concern." *Id.* Ultimately, Lopez testified she would not recommend Child be placed with Mother and that more time would not increase the likelihood Mother will address her issues.

[13] Throughout this matter, Mother has been referred to home-based therapy eight times but failed to complete it due to non-participation. At the time of the fact-finding hearing, Mother's case management referral was still open, but in jeopardy of being unsuccessfully closed due to non-participation. The juvenile

court found that "[f]our referrals were made for a substance abuse assessment and three referrals were made for the recommended treatment program[,]" and if any were completed, Mother has subsequently relapsed. Appellant's App., Vol. II at 14.

[14] The testimony at the fact-finding hearing supports the juvenile court's finding that the conditions that led to removal will not be remedied with additional time. At the fact-finding hearing, Child's guardian ad litem, Alane Singleton, testified that Child has not been placed back with Mother because she does not have stable housing or employment and has not been drug free. Singleton testified she would not recommend Child be placed with Mother because she is not able to properly care for Child and did not believe Mother should be given additional time to complete services. Jen Blevins, a Family Case Manager with DCS, testified that re-referring Mother to services was not likely to increase the likelihood of remedying the reasons for Mother's referral given that Mother has had nearly three years to address the issues and has not done so. Similarly, when asked whether Child could be placed with Mother if given more time, Annegelique Parker, a home-based therapist, testified:

> I struggle with that because as a therapist I obviously think people can change . . . . My issue is that it's been open for so long and how much longer would we give her to change or make the necessary changes. Would it sustain and what would that do to [Child]?

Tr., Vol. II at 60. Parker also did not think Mother is capable of consistently interacting with Child given the history of the case.

[15] Although the initial plan was reunification, DCS recommended changing the plan to adoption based on these conditions, namely, Mother's non-participation in services, unstable housing, and lack of employment. Additionally, throughout this case, Mother obtained two different vehicles, but both were repossessed, and she has not had independent and stable housing, and at some point, was living out of her car. Mother did testify that as of the time of the fact-finding hearing, she had stable employment at Family Dollar, which the case manager had no knowledge of, and was living with her mother-in-law; however, she also admitted to her case manager to using marijuana two weeks prior to the fact-finding hearing. *See* Tr., Vol. II at 43-44. Mother has not had independent housing throughout this case and her sobriety continues to be a major concern as she has not maintained sobriety for longer than six months at a time throughout this matter.

[16] We acknowledge that the purpose of terminating parental rights is to protect the child and is considered a "last resort, available only when all other reasonable efforts have failed." *B.H.,* 989 N.E.2d at 364-65 (internal quotations and citation omitted). In almost three and one-half years since this case commenced and despite numerous referrals, Mother has failed to successfully address her substance abuse issues and has demonstrated a pattern of instability. Thus, the evidence supports the juvenile court's finding that there is a reasonable probability that the unstable conditions which led to Child's removal will not be remedied and this finding supports the juvenile court's judgment terminating Mother's parental rights to Child.

## B. Best Interests of Child

[17] Mother contends the State did not establish by clear and convincing evidence that involuntary termination of her parental rights with Child would be in Child's best interests as required by Indiana Code section 31-35-2-4(b)(2)(C). Specifically, Mother contends that Child's therapist "hesitated to recommend termination" and testified that Mother "had been able to take care of [Child's] needs and should be able to do it again." Br. of Appellant at 27.

[18] In determining the best interests of the child, the juvenile court evaluates the totality of the evidence and need not wait until the child is "irreversibly harmed" before terminating parental rights. *A.D.S. v. Indiana Dep't of Child Servs.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. In addition to evidence that the conditions that led to a child's removal will not be remedied, a case manager and child advocate's recommendation to terminate the parent-child relationship is sufficient to prove by clear and convincing evidence that termination of parental rights is in the child's best interests. *Id.* at 1158-59.

[19] This court has held that a parent's non-remedied substance abuse and domestic violence issues alone are sufficient to support a juvenile court's conclusion that termination of parental rights is in the child's best interests although permanency is a "central consideration" in determining the child's best interests. *Id.* at 1159 (internal quotation omitted).

[20] As to Child's best interests, the juvenile court found that Mother has not visited with Child regularly, Child's behavior worsens after contact with Mother, and

Child craves stability that Mother does not provide. The juvenile court found termination of Mother's parental rights to be in the best interests of Child as it "would allow [Child] to be adopted into a stable and permanent home where all [Child's] needs will be safely met." Appellant's App., Vol. II at 14.

[21] Mother relies on several cases to challenge the juvenile court's finding that termination is in Child's best interests.[3] However, Mother's reliance on these cases is misplaced and can be clearly distinguished from the present matter. These cases differ from Mother's case as those parents demonstrated personal improvement and commitment to reunification with their children. As noted above, Mother has not achieved the stability Child needs or made improvements in Child's best interests.

[22] As to testimony regarding Child's best interests, Lopez, home-based case manager, testified she would not recommend Mother's reunification with Child based on Mother's sobriety issues and instability. Jen Blevins, family case manager, and Shannon Taylor, guardian ad litem, both testified that termination of the parent-child relationship was in Child's best interests. *See* Tr., Vol. II at 83-84, 100. Although either of these recommendations or Mother's ongoing substance abuse issues are sufficient to demonstrate by clear and convincing evidence that termination of parental rights is in Child's best interests alone, permanency is the main consideration. *See A.D.S.*, 987 N.E.2d

---

[3] Mother cites *In re G.Y.*, 904 N.E.2d 1257 (Ind. 2009); *In re J.M.*, 908 N.E.2d 191 (Ind. 2009); and *H.G. v. Indiana Dep't of Child Servs.*, 959 N.E.2d 272 (Ind. Ct. App. 2011), *trans. denied,* to support her argument.

at 1158-59. Mother has not achieved the requisite stability and Child was placed in a pre-adoptive home in the time before the juvenile court issued its order.

[23] The evidence in the record sufficiently supports the juvenile court's finding that termination of Mother's parental rights is in Child's best interests and will allow Child to ultimately be adopted into a home that can provide stability and meet Child's needs.

## C. Satisfactory Plan

[24] Mother also argues the termination of her parental rights and Child's adoption is not a "satisfactory plan" pursuant to Indiana Code section 31-35-2-4(b)(2)(D) because the State had not identified a permanent home for Child and the facts in this matter "do not warrant the 'extreme measure' of termination[.]" Br. of Appellant at 29-30.

[25] As discussed above, the evidence supports the juvenile court's findings and judgment terminating Mother's parental rights. As to Mother's contention that termination and adoption is not a "satisfactory plan" contemplated by the statute, a plan "need not be detailed" to constitute a "satisfactory plan" under the statute so long as the plan provides a "general sense" of where the child will be going after the parental rights are terminated. *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014), *trans. denied*. Moreover, a satisfactory plan does not have to guarantee that a suitable adoption will take place, only that the State

will attempt to do so. *Id.* "Accordingly, a plan is not unsatisfactory if DCS has not identified a specific family to adopt the children." *Id.*

[26] At the time of the fact-finding hearing, Child was in foster care and DCS was "searching for a pre-adoptive and stable home for [Child]" and was conducting visitation with a possible new placement. Tr., Vol. II at 85. By the time the juvenile court issued its order on April 9, 2018, Child had been placed in a pre-adoptive home. Therefore, we conclude termination of Mother's parental rights and Child's adoption is a "satisfactory plan" under the statute.

# III. Due Process

[27] Finally, Mother argues that the fact-finding hearing in the termination matter was fundamentally unfair. Specifically, she argues that "counsel should have been appointed to represent her in this matter" and the juvenile court erred by permitting her to decline the appointment of a public defender when Mother was not capable of defending her case. Br. of Appellant at 30.

[28] "Due process has never been defined, but the phrase embodies a requirement of 'fundamental fairness.'" *In re D.P.*, 27 N.E.3d 1162, 1166 (Ind. Ct. App. 2015) (quotation omitted). Termination of a parent-child relationship must meet the requirements of due process, *D.T. v. Indiana Dep't. of Child Servs.*, 981 N.E.2d 1221, 1224 (Ind. Ct. App. 2013), and a parent is entitled to counsel during these proceedings, Ind. Code § 31-32-2-5; Ind. Code § 31-32-4-1(2). Because a parent has a fundamental liberty interest in the care and custody of his or her child, we have held it is a due process violation to remove a child from an indigent parent

"without affording that parent the right to assistance of court-appointed counsel." *Matter of Adoption of C.J.*, 71 N.E.3d 436, 442 (Ind. Ct. App. 2017). Thus, a juvenile court has an obligation to appoint counsel to an indigent parent unless the parent knowingly and voluntarily waives the right to counsel. Ind. Code § 31-32-4-3(2); Ind. Code § 31-32-5-5.

[29] Mother was found to be indigent in August 2014 during the CHINS proceedings. At the initial termination hearing in October 2017, Mother engaged in the following colloquy with the juvenile court regarding representation:

> The Court: You do have the right to counsel, if you wish to hire an attorney you may. If you wish to have an attorney and you cannot afford one, I would appoint a public defender to represent you. Would you like to have a public defender?
>
> [Mother]: No sir.
>
> The Court: How do you want to go forward?
>
> [Mother]: I want to represent myself.
>
> The Court: Ok. I need to admonish you that if you represent yourself you'd be held to the same standards as an attorney as far as evidence and procedure. And the outcome obviously can be the loss of your parental rights. Well then, I guess we could just set this for trial.

[Mother]: Can I say something Your Honor?

The Court: Uh hm.

[Mother]: The only reason that DCS is basically keeping…

The Court: Well, I don't want to get into any of the evidence or anything so, that must be for trial.

[Mother]: So who do I need to talk to have visits with [Child] then since they won't set them up?

The Court: It would be the other Court, the CHINS Court.

[Mother]: How do I do that cause I can't just go talk to the Judge?

The Court: Well see this is…you'd have to ask at a hearing. I don't know when your next hearing is. But this is…

[Mother]: I don't have one.

The Court: […] just one of those things and you can't ask me how to do procedure like this because you're representing yourself, that's why…

[Mother]: Ok, well I don't have another hearing in there. They've closed that to come to this Courtroom.

The Court: There should be a review hearing. You have a permanency hearing set for January the 4th.

[Mother]: Ok, at what time, 1?

The Court: 9:30. Your last hearing was last month on the 21st.

[Mother]: Yeah.

The Court: Were you at that hearing?

[Mother]: Uh hm.

The Court: Ok. But I guess, I mean, my warning to you about representing yourself, you know, you just asked how to [sic] do I do this and if that happens in the trial I can't, you know, take your side of the case and give you legal advice so, ok just want to make sure you know. . . .

Tr., Vol. II at 5-7.

[30] Mother now argues that the fact-finding hearing in this matter was fundamentally unfair because she was "permitted to forego the appointment of a public defender, in spite of the court's admonishment[.]" Br. of Appellant at 30. Mother points to the fact that due to lack of counsel she was unable to cross-examine the witnesses, certain findings were unsubstantiated by admissible evidence, and the State was able to introduce evidence without objection, some of which she alleges contained "unproven allegations and hearsay." *Id.* at 31. In support of her argument, Mother also improperly relies on our supreme court's holding in *Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035 (Ind. 2004). In *Baker*, the court confronted the issue

of whether the criminal standard for ineffective assistance of counsel applies in termination proceedings and determined it does not; instead the inquiry on review of counsel's performance in a termination case is "whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination." *Id.* at 1041. *Baker* is inapplicable in the instant case because Mother represented herself at the fact-finding hearing.

[31] Indiana Code section 31-32-5-5 states that a parent who is entitled to representation by counsel "may waive that right if the parent does so knowingly and voluntarily." An examination of the record reveals Mother waived her right to counsel at the initial hearing and did not request counsel thereafter. *See In re G.P.*, 4 N.E.3d 1158, 1164 (Ind. 2014) ("[W]e have never held that a litigant who elects to waive the right to counsel is permanently bound by that decision . . . ."). "[A] pro se litigant is held to the same standards as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented[,]" which the juvenile court explained to Mother at the initial hearing. *Id*. Mother was aware of these standards and the consequences of failing to meet the standards as explained by the juvenile court. *See id*. Nevertheless, Mother chose to proceed pro se despite the juvenile court's admonishment. Based on her dialogue with the juvenile court, Mother knowingly and voluntarily waived her right to counsel and we cannot conclude the fact-finding hearing was fundamentally unfair due to her lack of representation.

At the end of her argument, Mother briefly argues there was no "compelling reason" to proceed with the fact-finding hearing in January 2018 when the State had not yet found a pre-adoptive home for Child. Br. of Appellant at 30. Specifically, Mother contends the juvenile court's denial of the guardian ad litem's request for a continuance until a pre-adoptive home for Child was found and the fact that Mother still had an open referral for services calls into question the accuracy and fairness of the proceeding. However, Mother fails to support these contentions by cogent reasoning or citation to authorities, statutes, or the record as required by Indiana Appellate Rule 46(A)(8)(a). Therefore, we conclude Mother has waived any argument as it relates to these contentions.

# Conclusion

For the foregoing reasons, we conclude the juvenile court's judgment terminating Mother's parental rights was not clearly erroneous and because Mother waived her right to counsel, she was not denied due process by the juvenile court's failure to appoint counsel for her. Accordingly, we affirm.

Affirmed.

May, J., concurs.

Baker, J., concurs with separate opinion.

| | |
|---|---|
| In re the Matter of The Termination of the Parent-Child Relationship of: | Court of Appeals Case No. 18A-JT-1058 |
| D.G. (*Minor Child*) | |
| and | |
| K.A. (*Mother*), | |
| *Appellant-Respondent,* | |
| v. | |
| The Indiana Department of Child Services, | |
| *Appellee-Petitioner* | |

**Baker, Judge, concurring.**

[35]     I fully concur with the majority opinion, as I believe we are compelled to affirm. I write separately to express my hope that trial courts in this State will do a more thorough job of questioning parents in termination proceedings who indicate a wish to proceed pro se than what occurred here. I acknowledge that

trial courts in termination proceedings are not required to engage in the same colloquy as must occur in criminal cases when defendants wish to proceed pro se. But I would hope, given the profound seriousness of what is at stake in termination proceedings, that our trial courts would err on the side of a thorough and careful conversation with parents in these circumstances to ensure beyond a doubt that their waiver of counsel is both voluntary *and* knowing. In this case, I do not believe that a thorough or careful enough conversation occurred. But while it leaves me deeply uncomfortable, I agree with the majority that we are compelled to affirm.