## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 03 2019, 9:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.S.M., A.J.M., J.J.M., J.L.J., and J.J. (Minor Children), and

L.J. (Mother) and R.M. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

April 3, 2019

Court of Appeals Case No. 18A-JT-2437

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

The Honorable Lori K. Morgan, Magistrate

Trial Court Cause Nos. 02D08-1801-JT-6, -7, -8, -9, -10

**Crone, Judge.**

## Case Summary

L.J. ("Mother") appeals the trial court's order involuntarily terminating her parental rights to her minor children, A.S.M., A.J.M., J.J.M., J.L.J., and J.J. ("the Children"), arguing that the evidence is insufficient to support it. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

Mother is the biological mother of A.S.M. (born in January 2010), twins A.J.M. and J.J.M. (born in January 2011), J.L.J. (born in March 2013), and J.J. (born in October 2014). R.M. ("Father") is the biological father of A.S.M., A.J.M., and J.J.M. He was only minimally involved in their lives and was incarcerated for reckless homicide in January 2018, with an earliest possible release date of March 2022.

At approximately 5:00 p.m. on June 16, 2015, Mother left four of the Children with a cousin and went to a friend's house.[1] The Children were taken to the home of another relative, who unsuccessfully attempted to locate Mother. Family members located the Children's grandmother, but she had to go to work and was unable or unwilling to care for them. The Children were taken to a police station. Law enforcement officers went to Mother's home at 6:30 p.m. and repeatedly attempted to call her, but were unsuccessful in contacting her. At approximately 9:00 p.m., Mother found the Children at the police station.

---

[1] J.J., who has severe asthma, had been in the care of a family friend since October 2014.

The Indiana Department of Child Services ("DCS") removed the Children from Mother on that date, and they were placed in foster care. On June 17 and 18, Mother submitted to drug screens that were positive for THC.

[4] On July 15, 2015, DCS filed an amended petition alleging that the Children were children in need of services ("CHINS"), which set out the foregoing facts. After a hearing, Mother admitted all but one of the allegations in the petition,[2] and the trial court adjudicated the Children CHINS. In its dispositional order, the trial court ordered Mother to "[m]aintain clean, safe, and appropriate sustainable housing at all times[,]" submit to a diagnostic assessment at Park Center and follow all recommendations, obtain and maintain suitable employment, enroll in and successfully complete SCAN home-based services program, submit to random drug testing and refrain from using illegal drugs, and attend and appropriately participate in all supervised visits with the Children, among other things. DCS Ex. 5 at 2-3.

[5] Mother failed to comply with many of these requirements, and in July 2016 the trial court changed the permanency plan from reunification to termination of parental rights and adoption. In January 2018, DCS filed a petition for the involuntary termination of Mother's and Father's parental rights. A hearing

---

[2] Mother did not admit to the allegation that her cousin found the Children home alone on June 16. We note that DCS had received reports of the Children being left unattended in August 2014 and March 2015.

was held on June 5 and 14, 2018.  In September 2018, the trial court issued an order containing the following findings of fact regarding Mother:[3]

> The mother has been diagnosed with Depression.  [DCS] made a referral for her participation in individual counseling, however, she did not regularly participate in said counseling and did not meet the treatment goals that had been set and her case was closed for failure to meet with the counselor.  A second referral was made for the mother's participation in counseling, however, she failed to regularly meet with the second counselor and her case was again closed for failure to regularly participate in the service.  At trial, one of the therapists testified that persons diagnosed with depression may require therapy on a long-term basis, yet Mother has failed to participate in or benefit from the counseling that was designed to assist her in addressing her depression.  It was established at trial that the mother had some difficulty in communicating with others and would respond to communication attempts with one-word answers.  Regular participation and engagement in counseling and home-based services would have assisted her in addressing the deficit in her pro social skills as well.  At the time of the initiation of the underlying proceedings and during the course of the underlying proceedings, the mother lacked stable housing and employment.  As a result, [DCS] made two referrals for home-based services for Mother which would have assisted her in obtaining appropriate housing and employment.  The service providers made attempts to assist her with a search for employment, with preparation for job interviews and with an application for Social Security benefits, however, the mother never fully engaged in services and did not maintain stable employment or obtain and maintain stable, appropriate housing.  At one point, the mother complained of difficulty in her legs and advised that she had a

---

[3] Where the order references Mother, Father, and the Children by name, we use these designations instead. The excerpted findings summarize more specific findings made elsewhere in the detailed twelve-page order.

hard time maintaining employment because of the pain in her legs. One of the home-based services providers attempted to assist her in applying for Social Security disability benefits, however, Mother never followed through with the application process. She has failed to complete many of the services that she was ordered to participate in, often stating that she was not in need of the service. However, based upon her interaction with the service providers as well as with the children, it is clear that she does, in fact, need the services that have been offered to her as those services were ordered so that she could remedy the reasons for removal of the children and for placement of the children outside of her home. Evidence presented at trial revealed that Mother is unable to support herself or to provide the children with the basic necessities of a suitable home.

The children have been removed from their parents' home for more than two years. They are in need of permanency and a safe, stable home environment. … Mother suffers from depression which is currently untreated and appears to be impacting her judgment and ability to function as well as her ability to appropriately parent the children. At trial, the mother acknowledged smoking marijuana the week before the hearing on the Petition for Termination commenced despite the fact that she is currently pregnant. Several of the parties' children have behavioral issues. Two of the children are exhibiting such issues in the school setting. Visitations between the mother and children have sometimes been challenging because of the behavioral needs of the children. In February of 2018, during the underlying CHINS proceedings, the mother sent the DCS family case[]manager a text message advising that visitations with the children were getting too much to handle and requesting that her visitation time with the children be decreased. As a result, the family case[]manager decreased her visitations with the children to two (2) hours per week.

The Court finds that the mother has not participated in and/or benefited from services provided and that she is not able to

provide for the basic necessities of a suitable home for the raising of the children.

Appealed Order at 9-10.

Based on these findings, the trial court concluded that DCS had proven by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the Children's removal and continued placement outside the home will not be remedied and/or that continuation of the parent-child relationship poses a threat to the Children's well-being, that termination of parental rights is in the Children's best interests, and that there is a satisfactory plan for the Children's care and treatment, which is adoption. Accordingly, the court terminated Mother's and Father's parental rights. Mother now appeals. Father does not participate in this appeal.

# Discussion and Decision

"[T]he involuntary termination of parental rights is the most extreme sanction a court can impose on a parent because termination severs all rights of a parent to his or her children." *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008). The purpose of terminating parental rights is not to punish the parents, but to protect the children. *Id*. "[A]lthough parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *Id*. A petition for the involuntary termination of parental rights must allege in pertinent part:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009) (quoting Ind. Code § 31-37-14-2). If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[8] "We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to

assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id.* at 92-93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re A.G.*, 45 N.E.3d 471, 476 (Ind. Ct. App. 2015), *trans. denied* (2016).

## Section 1 – DCS presented sufficient evidence to support the trial court's conclusion that there is a reasonable probability of unchanged conditions.

[9]     Mother first challenges the sufficiency of the evidence supporting the trial court's conclusion that there is a reasonable probability that the conditions that led to the Children's removal and continued placement outside the home will not be remedied.[4]  We have explained,

> In making such a determination, the court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions.  Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child.  The statute does not simply focus on the initial basis

---

[4] Mother also challenges the sufficiency of the evidence supporting the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the Children's well-being.  Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS was required to establish only one of the three requirements of that subsection by clear and convincing evidence.  *S.E. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 37, 46 (Ind. Ct. App. 2014), *trans. denied*.  Accordingly, we address only the first requirement.

for a child's removal for purposes of determining whether a parent's rights should be terminated, but also those bases resulting in the continued placement outside the home.[5]  A court may properly consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. Moreover, a trial court can reasonably consider the services offered by the DCS to the parent and the parent's response to those services.  In addition, where there are only temporary improvements and the pattern of conduct shows no overall progress, the court might reasonably find that under the circumstances, the problematic situation will not improve.

*In re N.Q.*, 996 N.E.2d 385, 392 (Ind. Ct. App. 2013) (citations, quotation marks, and alterations omitted).  The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change."  *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[10]  The foregoing findings, which Mother does not specifically challenge, establish that in the nearly three years between the Children's removal and the termination hearing, Mother had been unable to maintain stable housing[6] and employment, failed to complete many of the services that were ordered to assist her in obtaining suitable housing and employment and treating her depression, continued to use illegal drugs, and even requested reduced visitation with the

---

[5] Consequently, we are unpersuaded by Mother's overemphasis on the reason for the Children's removal, which she claims resulted from a "misunderstanding" about when her cousin would return the Children to her.  Appellant's Br. at 17.

[6] In fact, Mother changed residences between the June 5 and June 14 hearing dates.  Tr. Vol. 2 at 178.

Children because she found the visits "too much to handle[.]" Appealed Order at 10. The evidence presented by DCS was sufficient to establish that there is a reasonable probability that Mother's "problematic situation will not improve." *N.Q.*, 996 N.E.2d at 392.

## Section 2 – DCS presented sufficient evidence to support the trial court's conclusion that termination of Mother's parental rights is in the Children's best interests.

Next, Mother challenges the sufficiency of the evidence supporting the trial court's conclusion that termination of her parental rights is in the Children's best interests. In determining what is in a child's best interests, the trial court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In doing so, the trial court must subordinate the parent's interests to those of the child. *Id.* The trial court need not wait until the child is irreversibly harmed before terminating parental rights. *Id.* "The historic inability to provide adequate housing, stability, and supervision, coupled with the current inability to provide the same, will support a finding that continuation of the parent-child relationship is contrary to the child's best interests." *In re A.H.*, 832 N.E.2d 563, 570 (Ind. Ct. App. 2005).

As indicated above, DCS presented ample evidence that Mother has historically been and continues to be unable to provide adequate housing, stability, and supervision. Mother merely "incorporates her argument from the previous section[,]" which we have found unpersuasive, and asserts that her parental

rights "should not be terminated solely because there is a better home available for the children[,]" which is definitely not the case here. Appellant's Br. at 22. In sum, DCS presented sufficient evidence to establish that termination is in the Children's best interests.

## Section 3 – DCS presented sufficient evidence to support the trial court's conclusion that adoption is a satisfactory plan for the Children's care and treatment.

[13] Finally, Mother challenges the sufficiency of the evidence supporting the trial court's conclusion that adoption is a satisfactory plan for the Children's care and treatment. "This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). "A DCS plan is satisfactory if the plan is to attempt to find suitable parents to adopt the children." *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014), *trans. denied*. "In other words, there need not be a guarantee that a suitable adoption will take place, only that DCS will attempt to find a suitable adoptive parent." *Id.* "Accordingly, a plan is not unsatisfactory if DCS has not identified a specific family to adopt the children. Part of the reason for this is that it is within the authority of the adoption court, not the termination court, to determine whether an adoptive placement is appropriate." *Id.* (citation omitted). Consequently, we reject Mother's suggestion that DCS was required to present evidence regarding "whether the children would be likely to be adopted individually, all five together, or by some subgrouping." Appellant's

Br. at 24. Having disposed of Mother's arguments, we affirm the trial court's termination of her parental rights.

[14]     Affirmed.

Bradford, J., and Tavitas, J., concur.